**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **BYRON E. ADAMS,**<br>**A60952,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**K. HVARRE,**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 26-cv-282-RJD** |

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

Plaintiff Byron E. Adams, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Dixon Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Big Muddy River Correctional Center (Doc. 1). Plaintiff alleges he slipped and fell in the shower, injured his knee, and was transferred to Dixon before he received proper care.

Adams' complaint (Doc. 1) was dismissed for failure to state a claim, and his amended complaint (Doc. 10) is now before the Court[1] for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C.

[1] The Court has jurisdiction to screen the Complaint considering Adams' consent to the full jurisdiction of a Magistrate Judge, and the limited consent by the Illinois Department of Corrections to the exercise of Magistrate Judge jurisdiction as set forth in the Memorandum of Understanding between this Court and the Illinois Department of Corrections.

§ 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

In the original complaint, Adams alleged that he was "walking out of the shower when [he] fell down on [his] left knee it hurted real bad." (Doc. 1 at 7). In the amended complaint, Adams now alleges that when he finished showering, he sat on a shower chair, rolled to his wheelchair, and fell while attempting to transfer from the shower chair to the wheelchair. (Doc. 10 at 1-2). Adams alerted an officer and was sent to the medical unit where a nurse practitioner prescribed an x-ray and ice. (*Id.* at 2). He claims that despite the nurse practitioner's directions, he never received ice or an x-ray while at Big Muddy.

Adams alleges that he stopped Defendant Hvarre and told her about his fall and the fact that he was not getting ice. Adams alleges, "she didn't ask me anything about how I fell the only response I got from her was (and) just like she didn't care." (*Id.*). Adams also alleges that Hvarre indicated she would take care of the ice issue, but nothing ever happened. (*Id.*).

Adams describes the shower floor as slippery tile, without any mats. He also complains that the shower lacked handrails. He claims that Hvarre knew of the lack of handrails and shower mats from touring the cellhouse often and physically seeing the shower. He further alleges that Hvarre knew because "inmates are always filing grievance about the shower." (*Id.* at 3). Adams alleges he told Hvarre he fell due to the lack of mats and bars and her "response was just this (and) she should have known by there was not mats in the shower and no bars to hold onto there was a serious risk[.]" (*Id.* at 4).

Adams alleges he was protected under the ADA and RA, and that he told Hvarre about his fall, so she was informed of the serious risk. (*Id.* at 4). He complains he sent multiple grievances

while at Big Muddy and afterwards but never got a response. (*Id.*). Adams' amended complaint does not contain a demand for relief.

Adams' amended complaint is inadequate as pled for multiple reasons. First, courts have repeatedly held that a routine slip-and-fall on a shower floor does not give rise to a claim under the Eighth Amendment. *Pyles v. Fahim*, 771 F.3d 403, 410 n. 25 (7th Cir. 2014) ("Federal courts have consistently adopted the view that slippery surfaces and shower floors in prisons, without more, cannot constitute a hazardous condition of confinement."). In *Pyles*, an inmate wrote a grievance about stairs that inmates traverse when exiting the shower regularly being slippery and wet. Five weeks after the grievance, and before it got any response, that inmate fell and seriously injured himself on the stairs. The Seventh Circuit concluded that the inmate failed to state a claim against the Warden for the slippery stairs because slippery surfaces and shower floors in prison, *without more*, cannot constitute a hazardous condition of confinement.

In *Anderson v. Morrison*, the Seventh Circuit found that an inmate had plausibly alleged "more" than a plain slippery surface where he was forced to descend stairs wet with milk and littered with food and debris while his hands were cuffed behind his back. 835 F.3d 681, 682-83 (7th Cir. 2016). The Court emphasized that the plaintiff could not use his hands to steady himself, and guards refused to assist. The Court also emphasized that shower floors, and even the stairs outside the shower in *Pyles* were unavoidably wet, whereas the staircase coated in milk and debris was a *not* a necessary condition of prison and was one that easily could have been cleaned. Additionally, in *Balle v. Kennedy*, the Seventh Circuit concluded that forcing inmates to carry boiling water over an uneven kitchen floor could support a plausible Eighth Amendment conditions claim. 73 F.4th 545, 554 (7th Cir. 2023). The *Balle* Court emphasized that a wet or uneven kitchen floor is not meaningfully more dangerous than a run-of-the-mill slip and fall, but

carrying boiling water exacerbated the danger. *Id.* at 554-55. The Court also noted the inmate carrying the bucket of water could not see the floor below it and could not use his full hands to steady himself. *Id.* at 554.

Here, Adams still has not identified anything more than a plain slippery floor, which is not enough to state a claim under *Pyles*. Adams may wish to imply that his status as a wheelchair user was something "more" than a plain slippery floor, but even assuming that fact the Court does not find a condition that rises to a constitutional level. Adams' allegations suggest he was standing to shower, used the shower chair to transit the floor, and fell at the last minute while trying to transfer from shower chair to wheelchair. Adams had his hands free and did not identify anything that made the wet floor more dangerous than usual, especially where he also had a shower chair to stabilize him. Adams' situation simply lacks exacerbating factors like those identified in *Anderson* and *Balle*.

Furthermore, Adams has not adequately established deliberate indifference on Hvarre's behalf. Adams argues that Hvarre should have known the shower was unusually dangerous due to the lack of mats and handrails because she often visually saw the showers on gallery tours and received many grievances from other inmates about the showers, but this does not establish that Hvarre knew there was any danger to Adams before his fall. He does not say he personally wrote grievances to her before the fall, nor does he say he ever verbalized a concern to Hvarre before his fall. Though he alleges he wrote grievances *after* he fell, the post-fall grievances cannot attribute deliberate indifference to Hvarre for actions before the fall. Additionally, the fact that other inmates submitted grievances about the showers does not illuminate what Hvarre may have learned from those grievances. The grievances could have been about cleanliness, times or days scheduled for showers, or any number of things. The generic assertion that grievances were filed, is not enough

to establish that Hvarre knew of the specific risk Adams faced. Overall, the Court still finds Adams' slip-and-fall claim constitutionally inadequate.

Next, Adams now attempts to bring a claim under the Americans with Disabilities Act or the Rehabilitation Act. Under the ADA and RA, a plaintiff must allege that he is a qualified individual with a disability, who was denied the benefits of the services, programs, or activities at the prison, by reason of his disability. 42 U.S.C. § 12132; 29 U.S.C. § 794(a). Adams appears to now allege he was a wheelchair user, but he does not specify a program, service, or activity that he was denied access to by reason of his disability. The implication is that he desired accommodations such as shower mats or handrails for the showers, but he does not say the lack of these accommodations entirely deprived him of the ability to shower, nor does he say he ever asked the prison for these accommodations before his fall. *See e.g., Wagoner v. Lemon*, 778 F.3d 586, 592-93 (7th Cir. 2015) (finding that an inmate's accommodations claims failed where he did not argue that he was denied access to all programs and activities, and instead just said the lack of accommodation caused longer waits, humiliation, and inconvenience when he had to crawl off a transport van not wheelchair equipped). Adams' barebones assertion that the ADA and RA were violated is insufficient to support a plausible claim.

Finally, to the extent that Adams seeks to hold Hvarre liable for his lack of medical care, this theory is insufficiently pled to proceed. Speaking to a prison official a single time in passing about a desire for care, generally is not enough to establish deliberate indifference. *See e.g., Owens v. Duncan*, 788 Fed. App'x 371, 374 (7th Cir. 2019) (finding that inmate's allegations that four unnamed prison staff participated in denying him care based on single interactions where they failed to summon him for sick call or did not give him pain medication were not sufficient to sustain deliberate indifference claims). As with the previous complaint, rather than saying how

Hvarre responded, Adams just left a fill-in-the-blank kind of notation saying Hvarre said "(and)." The absence of facts about Hvarre's verbal response to Adams makes it impossible to determine if Hvarre exhibited deliberate indifference.

Having reviewed Adams' allegations twice, the Court finds it unnecessary to invite further amendments. *See e.g. Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022) (amendment would be futile if plaintiff already had multiple chances to cure deficiencies); *Always Towing & Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 707 (7th Cir. 2021) (courts may deny leave to amend if an amendment would be futile); *McCree v. Grissom*, 657 F.3d 623, 624 (7th Cir. 2011) (leave to amend shall be granted where justice so requires, but leave to amend need not be given if an amendment to the complaint would be futile). As such, this case is now dismissed for failure to state a claim under 28 U.S.C. § 1915A. This dismissal shall count as a strike for purposes of 28 U.S.C. § 1915(g).

## DISPOSITION

Adams' Motion for Status (Doc. 11) is **GRANTED** by the issuance of this Order. Adams' amended complaint (Doc. 10) is **DISMISSED** with prejudice for failure to state a claim under 28 U.S.C. § 1915A. The Clerk of Court shall enter judgment and **CLOSE** this case.

If Adams wishes to appeal this Order, he must file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). If Adams chooses to appeal, he will be liable for the $605.00 filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-56 (7th Cir. 2008). Moreover, if the appeal is found to be nonmeritorious, Adams may incur another "strike" under 28 U.S.C. § 1915(g). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure

59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no later than 28 days after the entry of judgment, and this 28-day deadline cannot be extended.

**IT IS SO ORDERED.**

**DATED: 10/7/2026**

**REONA J. DALY**
**United States Magistrate Judge**